## PARKER vs. KELLY.

*November 12 — November 25, 1884.*

*(1) Limitation of actions: Absence of defendant from state. (2) Evidence: Cross-examination. (3) Right to open and close: Reversal of judgment.*

1. Sec. 4231, R. S. (providing that if when the cause of action shall accrue against any person he shall be out of this state, the action may be commenced within the term limited, after such person shall return to or remove to this state), applies to the temporary absence of a resident of the state, although during such absence a summons might be served by leaving it at his usual place of abode.

2. Plaintiff proved his ownership of a note in suit by assignment. Defendant offered no evidence on the subject, but when plaintiff was testifying in rebuttal upon other matters attempted to show by cross-examination that plaintiff was not the owner but was attempting to collect the note by collusion with others. *Held*, not proper cross-examination.

3. A judgment will not be reversed because the appellant was erroneously deprived of his right to open and close, unless it appears that he was prejudiced thereby.

APPEAL from the Circuit Court for *Racine* County.

Action upon a promissory note for $880.79, dated June 2, 1876, payable six months after date, executed and delivered by the defendant to one Christian Heck and alleged to have been assigned to the plaintiff prior to the commencement of the action. It is further alleged that prior to the maturity of the note the defendant left the state and was continually absent therefrom up to about the month of August, 1878.

A second cause of action was stated in the complaint, based upon an account for goods sold and delivered by said Heck to the defendant, which account, it is alleged, was also assigned to the plaintiff.

The answer admits the execution of the note, but denies that the defendant has knowledge or information sufficient to form a belief as to the assignment thereof to the plaint-

iff. It alleges that the first cause of action accrued more than six years before the commencement of the action, and further alleges that at the time of the maturity of said note the defendant "was by occupation a mariner, and at said date and for some time thereafter was absent from the state of Wisconsin, pursuing his said occupation and solely for the purpose of such pursuit and by reason thereof, and that at the date of the execution of said note and at the maturity thereof, to wit, on the 2d day of December, 1876, and at all times since last mentioned date, the defendant has had his residence in the city of Racine, in said state, wherein defendant's family, consisting of his wife and two children, have resided and have remained without interruption; and that at all of said times service of a summons could have been had upon the defendant within this state so as to give to this court jurisdiction over his person and render him liable to a personal judgment."

For a second defense to the first cause of action the answer alleges: "That at or about the time of the execution of said note the defendant was indebted to the plaintiff, and one Thomas Dickinson, which said indebtedness, together with the indebtedness of the defendant to said Christian Heck upon the note alleged in the complaint, amounted to the sum of $2,100; that for the purpose of securing the payment of the whole of the said indebtedness, the defendant conveyed and transferred to the plaintiff and to the said Christian Heck and Thomas Dickinson, jointly, on the 13th day of June, 1876, by bill of sale, a certain schooner called the Challenge; that by the terms of said conveyance it was stipulated that in case of the payment by the defendant to said parties of said sum of $2,100 in one year from the said 13th day of June, 1876, with interest thereon at the rate of ten per cent. per annum, the said parties should reconvey the said schooner Challenge to the defendant; but that in case of the failing of the defendant to pay said sum as aforesaid the

said conveyance should be absolute. That at the time of said conveyance and at the time of the maturity of said obligations of the defendant to said parties, said schooner Challenge was worth about $8,000; that the said parties have not, since the time of said conveyance, reconveyed or returned said schooner Challenge to the defendant, but on the contrary have kept and retained the same and have converted the same wholly to their own use, and have not accounted to or paid to the defendant the value of said schooner or any part thereof, but have retained and now retain to themselves and to their own use the full benefit and profit of the same, and that by means thereof the note alleged in the complaint has been fully paid."

As to the second cause of action the answer alleges payment in full. This cause of action was withdrawn by the plaintiff at the trial.

At the trial the plaintiff offered in evidence the note, and proved the assignment thereof to him. It was conceded that the defendant left the state prior to the maturity of the note, and that the time of his return thereto was in August or September, 1878. The plaintiff then rested, and the defendant moved for a nonsuit, which was denied. Other evidence given at the trial will sufficiently appear from the opinion. At the close of the testimony on both sides the defendant requested the court to direct a verdict for the defendant on the ground that the action was barred by the statute of limitations. This request was denied.

The court submitted the following questions for a special verdict. 1. Was the note in suit a part of the debts secured by the transfer of the schooner Challenge? 2. Have Messrs. *Parker* and Dickinson received any money from said schooner, either from her sale or earnings? The defendant's counsel requested leave to make the opening and closing arguments to the jury, which was refused, and such arguments were made by counsel for the plaintiff. The jury

answered the first question in the negative and the second in the affirmative.

The defendant appealed from a judgment in favor of the plaintiff.

*Edwin White Moore*, for the appellant.

For the respondent there was a brief by *Fish & Dodge*, and oral argument by *Mr. Fish*.

ORTON, J. The note became due while the defendant, who was the master of a vessel, was absent from the state on his business, and he remained so absent nearly two years, while his family during that time resided in the city of Racine, in this state; and he was so temporarily absent, intending to return to his family and the said place of his residence when not so employed out of the state. From the time of his return to this state six years had not elapsed when this suit was brought. The main and important question is, Had the statute of limitations run against the note? This must depend almost solely on the construction of our own statute, for there is, perhaps, no case outside of this state where the precise language of our own statute has been considered.

The statute (sec. 4231, R. S.) is: "If, when the cause of action shall accrue against any person, *he shall be out of this state*, such action may be commenced within the terms respectively limited [six years] after such person shall return to or remove to this state." The language of the statutes of Massachusetts and New York is substantially like that of our own statute, with the exception of the words " or remove to," and this very difference may make the New York and Massachusetts authorities govern this court as to the construction of a statute evidently borrowed from those states, if it should appear that the words " or remove to" were inserted in our statute in order to make it verbally conform to the construction placed upon the statute with these words out of it by the courts of those states.

The setoff in the case of *Ruggles v. Keeler*, 3 Johns. 263, accrued when both the parties resided and were personally out of the state of New York, and six years had not run after the party charged therewith "returned to" (or removed to) the state. Chancellor KENT, in that case, said: "But a proviso in the statute of Anne, and which we have adopted in our act of limitations, saves the operation of the statute if the party shall be 'out of the state' at the time the cause of action arises against him, and the statute does not begin to run until 'after the return' of the defendant. Whether the defendant be a resident of this state and only absent for a time, or whether he resides altogether out of the state, is immaterial. He is equally within the proviso." He then cites decisions on English statutes which construe the word "return" to embrace Englishmen temporarily absent, and foreigners who reside always abroad and come into England.

The language in the Massachusetts statute, "until his return within the state," was construed to embrace as well persons who had never previously been within the commonwealth, as those who were residents therein, and were out temporarily, and return. *Milton v. Babson*, 6 Allen, 322. Chief Justice BIGELOW admits that the language is equivocal and doubtful, but construes it, under the rule *verba intentioni debent inservire*, as intended to embrace nonresidents, although the word "return" is inapt as to them.

Such, we understand, has always been the construction of this statute in those states, and the supreme court of the territory, in 1842, cited the cases of those states to sustain a similar construction of our own statute, in *Brown v. Bicknell*, 1 Pin. 226. The revisers, in order to make the statute read as it has so been construed, and supply the defect, inserted the words " or remove to," so as to clearly embrace nonresidents. See Revisers' Notes. By this amendment all chance or right to place any other construction upon this part of the section than the language itself clearly imports,

is foreclosed.   Whether the full or partial remedies of the law are or are not suspended by a resident of this state being temporarily out of the state, cannot be considered in giving effect to this plain and unambiguous language; for it is evident, from the above authorities and the amendment, that they were not considered by the legislature.   The case is directly and clearly within the statute, for the defendant resided in this state, was *out of it* when the cause of action accrued, and *returned into it* some two years thereafter. While so out of the state the statute did not run against the note.

The late case of *Whitcomb v. Keator*, 59 Wis. 609, is cited by the learned counsel of the appellant as being in conflict with this construction of the first clause of the section.   But it clearly is not.   In that case the defendant was a resident and in the state when the cause of action accrued and the statute began to run.   He then removed to and became a resident of the state of Illinois, and remained such resident for twenty years, and then removed or returned to this state.   In that interval, however, he was several times in this state temporarily, and the question was whether such a return to the state caused the statute again to run, and it was held that it did not, but that he must have been in this state so openly and publicly that the creditor might cause process to be served upon him.   It depended upon the character of his return to the state whether the statute would begin again to run.   It was a construction of the act of the defendant in view of the statute, rather than the construction of the statute.   It was the last clause of the section only that was considered or involved in that case, but the chief justice, incidentally in the opinion, by way of argument and illustration, places precisely the same construction on the first clause as above established, and cites some of the above authorities to sustain it.   It is useless to consider cases in states which have not our statute in language, or

Parker vs. Kelly.

authorities elsewhere in apparent conflict with this construc-
tion. To place any other construction upon the statute, an
interpolation of other words would be necessary. "If he
shall be out of this state," must have the qualifying words,
"and reside out of the state," or "so that the process cannot
be served upon him," to give the words of the statute the
meaning contended for by the counsel of the appellant.
This would be legislation and not construction. This dis-
poses of the motion for a nonsuit and the motion for the
direction of a verdict for the defendant.

The answer put in issue the ownership of the note by the
plaintiff, and the plaintiff proved such ownership by assign-
ment. The defendant offered no proof on the subject, but
when the plaintiff and one of his witnesses had testified in
rebuttal to the testimony of the defendant as to certain de-
fenses to the note, his counsel asked questions upon cross-
examination tending to show that the plaintiff did not own
the note, but was seeking to collect it for and by collusion
with others, and such questions were objected to as not
being proper cross-examination, and the objection was sus-
tained, and, we think, properly, because the defendant had
not offered such evidence affirmatively when the case was
with him. It was certainly discretionary with the court to
allow such proof afterwards, and the plaintiff had a right
to object to its being made by cross-examination of wit-
nesses testifying exclusively as to other matters.

The exception to the refusal of the court to strike out cer-
tain testimony of the plaintiff on recross-examination was
captious. The plaintiff testified that there was some indebt-
edness to Heck, the payee of the note, outstanding, other
than that included in the bill of sale which secured the note
in controversy; and he gave other testimony as to what in-
debtedness the bill of sale was intended to secure, without
objection, and then testified as follows: "I understood there
was considerable account between him [the defendant] and

Heck that was not settled." When he stated that he understood that from Heck, the defendant's counsel asked that such testimony be stricken out. The court ordered that it be stricken out. The counsel then said: "I do not mean the last answer. I mean all the testimony in regard to the other matter." As to that other matter, the plaintiff had testified that he obtained his information from the defendant. The court refused to strike out such evidence, and to this refusal the counsel excepted. This exception is in the record, and insisted upon in the argument here, and must be noticed and disposed of, even at the expense of considerable space in this opinion, baseless as it is. The record is somewhat confused, but, as I understand it, this very matter was inquired about by the counsel of the defendant on the first cross-examination, and this inquiry was only in rebuttal; but, whether so or not, the court was clearly right in its ruling.

Another exception equally untenable was to the refusal of the court to allow the defendant's right to open and close the case because he had the affirmative of the issue. But he had not the affirmative, for he had put in issue the ownership of the note, and the plaintiff was required to and did prove its ownership. If his right had been clear it was no error, for it does not appear that he was prejudiced by the ruling, and it was at most discretionary, and there was no abuse of that discretion. *Second Ward Savings Bank v. Shakman,* 30 Wis. 333.

We can find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.